806 F.2d 1122
 257 U.S.App.D.C. 30
 Don DURNS
v.
BUREAU OF PRISONS, et al., Appellants.
Eugene John IZZI
v.
UNITED STATES PAROLE COMMISSION, Appellant.
Robert A. MINEO
v.
UNITED STATES DEPARTMENT OF JUSTICE, et al., Appellants.
Eddie David COX
v.
UNITED STATES DEPARTMENT OF JUSTICE, et al., Appellants.
 Nos. 85-5704, 85-5714, 85-5778 and 85-5999.
 United States Court of Appeals,
District of Columbia Circuit.
 Dec. 23, 1986.
 
 Appeals from the United States District Court for the District of Columbia (Civil Action Nos. 84-01327, 83-03030, 84-03899 and 85-00892).
 Eric R. Glitzenstein, Katherine A. Meyer and Alan B. Morrison, Washington, D.C., were on appellees' petition for rehearing en banc.
 On Appellees' Suggestion for Rehearing En Banc
 Prior report: 804 F.2d 701.
 Before WALD, Chief Judge, ROBINSON, MIKVA, EDWARDS, GINSBURG, BORK, STARR, SILBERMAN, BUCKLEY, WILLIAMS and GINSBURG, Circuit Judges.
 ORDER
 PER CURIAM.
 
 
 1
 Appellees' suggestion for rehearing en banc has been circulated to the full Court. The taking of a vote thereon was requested. A majority of the judges of the Court in regular active service have not voted in favor of the suggestion. Accordingly, it is
 
 
 2
 ORDERED, by the Court en banc, that appellees' suggestion is denied.
 
 
 3
 WALD, Chief Judge and SPOTTSWOOD W. ROBINSON, III, MIKVA, HARRY T. EDWARDS and RUTH B. GINSBURG, Circuit Judges, would grant the suggestion.
 
 
 4
 A statement of WALD, Chief Judge, joined by SPOTTSWOOD W. ROBINSON, III, MIKVA and HARRY T. EDWARDS, Circuit Judges, is attached.
 
 
 5
 A statement of RUTH B. GINSBURG, Circuit Judge, is attached.
 
 
 6
 A statement of SILBERMAN, Circuit Judge, is attached.
 
 
 7
 WALD, Chief Judge, with whom Circuit Judges ROBINSON, MIKVA and EDWARDS join, dissenting from denial of rehearing en banc:
 
 
 8
 I believe the court may be making a serious legal error in applying Exemption 5 to a prisoner's attempts to obtain a copy of his presentence report. That exemption covers "inter-agency or intra-agency memorandums" not routinely discoverable in civil litigation. Its purpose is "to protect the deliberative process of the government, by ensuring that persons in an advisory role [will] be able to express their opinions freely to agency decision-makers without fear of publicity." Ryan v. Department of Justice, 617 F.2d 781, 789 (D.C.Cir.1980); see also Federal Trade Commission v. Grolier Inc., 462 U.S. 19, 23, 103 S.Ct. 2209, 2212, 76 L.Ed.2d 387 (1983); Environmental Protection Agency v. Mink, 410 U.S. 73, 86-87, 93 S.Ct. 827, 835-36, 35 L.Ed.2d 119 (1973).
 
 
 9
 It is difficult to see how a presentence report, which is prepared for a court (not an agency under FOIA) and is fully disclosable in almost all cases under Federal Rule of Criminal Procedure 32(c) to the defendant and his counsel at the time of sentencing, which is later transmitted to the Bureau of Prisons and to the Parole Commission for use in classification and parole decisions, and which must again be disclosed to the prisoner before a parole hearing, see 18 U.S.C. Sec. 4208(b)(2), can be said to threaten the deliberative processes of the executive branch. The sentencing court is not advising or consulting with the Parole Commission, but is simply transmitting a document which it has already disclosed to the defendant and used in making its own final decision. This case is thus clearly distinguishable from Ryan v. Department of Justice. There the "documents ... were generated by an initiative from the Department of Justice, i.e., the questionnaire sent out by the Department to the Senators." Unlike the questionnaires in Ryan, the presentence reports were not "created ... in response to an initiative from the executive branch ... as part of the deliberative process...." 617 F.2d at 790. Their primary role in judicial decisionmaking has already been performed and they have already been made available to the defendants by the time the executive gets them.
 
 
 10
 Thus, whatever chilling effect exposure may have on informants who contribute to the report[1] will already have occurred when the executive first lays eyes or hands on the report, and in any case the chill is to informants to the court, not to the executive agencies.
 
 
 11
 As recounted in Judge Wright's dissent, the history of the Bureau's unflagging resistance to FOIA disclosure in this area is well known; for several years it argued--unsuccessfully in this court--that presentence reports were not "agency records" at all until the Solicitor General declined to support that argument in the Supreme Court. Now resort is had to Exemption 5 in order to block wholesale any access by prisoners under FOIA to the reports. But I fear this result may pervert both the language and the purpose of that exemption; where is the inter-agency memorandum involved and where is the executive deliberative privilege threatened? Exemptions 6 (privacy) and 7 (privacy and law enforcement) would seem to be more appropriate vehicles for taking care of any special material contained in presentence reports that should be protected from the prisoner's knowledge. And, contrary to Judge Silberman's assertion, Exemption 6 allows for balancing the requester's interest in access against the harm to the individual whose privacy is threatened, and so would permit an agency to grant the report to a prisoner but deny it to a curious citizen. Exemption 5 permits no such distinction. See Department of Justice, Short Guide to the Freedom of Information Act 11 (May 1979); J. O'Reilly, Federal Information Disclosure p 16.07 (1986).
 
 
 12
 I find the panel's rationale for invoking Exemption 5 almost a parody of legal formalism: a report which under statute must be disclosed in its entirety (except for a few special exemptions) to a prisoner at several points in the process can be withheld in its entirety under FOIA because it is not "routinely available" to a third party in civil discovery. Such a rationale does not just elevate form over substance; even the form of Exemption 5 must be twisted to bring presentence reports within its ambit.
 
 
 13
 Especially in a statute like FOIA whose exemptions are to be "narrowly construed," this ruling badly needs reconsideration by the entire court.
 
 
 14
 GINSBURG, RUTH B., Circuit Judge, Statement on Denial of Rehearing En Banc:
 
 
 15
 I agree that the matter addressed in Chief Judge Wald's statement is sufficiently grave to warrant consideration and decision by the full court. Accordingly, I would grant the suggested rehearing.
 
 
 16
 SILBERMAN, Circuit Judge, Statement on Denial of Rehearing En Banc:
 
 
 17
 Decrying legal formalism, Judge Wald paradoxically argues that presentence reports are not inter-agency memoranda because they are sent to the Parole Commission by the courts rather than by another executive branch entity. This argument--not mentioned in Judge Wright's dissent and raised by Appellees only at oral argument--would seem foreclosed by Ryan v. Department of Justice, 617 F.2d 781 (D.C.Cir.1980), where we held that responses to Attorney General questionnaires, drafted by Senators, concerning their recommendations for judicial nominations were nonetheless inter-agency memoranda. "Congress apparently did not intend 'inter-agency' and 'intra-agency' to be rigidly exclusive terms, but rather to include any agency document that is part of the deliberative process." Id. at 790. I do not see how a principled distinction under FOIA can be drawn between reports that come to the executive branch from Congress and those that come from the judiciary.[1]
 
 
 18
 Nor can it be disputed that the Parole Commission uses the presentencing report in its deliberation process much the same way confidential statements made to air crash safety investigators were used by the Air Force in United States v. Weber Aircraft Corp., 465 U.S. 792, 104 S.Ct. 1488, 79 L.Ed.2d 814 (1984). Presentence reports are expressly intended to assist the Parole Commission's decisionmaking. See 18 U.S.C. Sec. 4207 (1982). See also Berry v. Department of Justice, 733 F.2d 1343, 1351 (9th Cir.1984). That the judiciary uses the presentence report first--at the time of sentencing--in no way detracts from the undeniable fact that the Parole Commission uses them a second time in aid of its decision as to whether or not a prisoner will be eligible for parole.
 
 
 19
 Judge Wald's position essentially is based on the proposition that Exemption 5's rationale disappears when a prisoner is shown but not given his presentence report (or at least portions of it) at the time of sentencing. Thus, she argues that "whatever chilling effect exposure may have on informants who contribute to the report has already occurred." But as the government argued before the panel, it is one thing to allow the prisoner and his counsel an opportunity to read the report and quite another to give the prisoner a copy, which then could be distributed throughout a prison or even published. We cannot know what effect that would have on those who now contribute to presentence reports. Moreover, the implication of Judge Wald's interpretation is that presentence reports would be disclosable to third parties as well, since FOIA determinations do not depend on the identity of the requester. The privacy interest of prisoners might well be threatened by such disclosures. To be sure, as Appellees pointed out, FOIA's personal privacy exemption, Exemption 6, would provide protection--if the government asserted the exemption--for presentence reports that are "similar" to "personnel and medical files," "the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. Sec. 552(b)(6) (1982). See, e.g., Crooker v. United States Parole Commission, 730 F.2d 1, 9 (1st Cir.1984). Still, Judge Wald's position, if adopted, could generate a spate of new fact-specific cases where the invasion of privacy is only arguably "clearly unwarranted."
 
 
 
 [1]
 Actually, the best available research shows quite dramatically that the disclosure of presentence reports under Rule 32(c) has not affected the availability of information. "[D]isclosure has been achieved without the serious repercussions predicted by opponents of the mandatory disclosure rule." Fennell and Hall, Due Process at Sentencing: An Empirical and Legal Analysis of the Disclosure of Presentence Reports in Federal Courts, 93 Harv.L.Rev. 1613, 1689 (1980); see also Fed.R.Crim.P. 32 advisory committee's note (1974 amendment) ("Experience ... does not lend support to the argument that disclosure will result in less complete presentence reports...."); Berry v. Department of Justice, 733 F.2d 1343, 1355 (9th Cir.1984) ("If any chilling of sources were to occur, [the initial disclosure before sentencing] would certainly trigger it.")
 
 
 [1]
 And, I do not see how a distinction logically can depend on whether the Executive branch asks another branch for a report for use in the Executive branch's deliberations or whether, as here, a statute directs the Executive branch to use the report in its deliberations